UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

UNITED STATES OF AMERICA

v.

OSCAR ROMERO,

                Defendant.

**DECISION AND ORDER**
13-CR-83S

─────────────────────────────────

## I) INTRODUCTION

Pending before the Court is a motion (Dkt. No. 225) by defendant Oscar Romero ("Romero") for pretrial release on conditions available under 18 U.S.C. § 3142(c). This motion marks Romero's first formal request for bail; he made a brief argument for release at his arraignment on April 4, 2014, but he reserved his right to a full hearing. In support of his motion, Romero asserts that he surrendered voluntarily for arraignment and has nothing in his criminal history suggesting that he would be a flight risk. Romero also emphasizes his family ties to Western New York and proposes living with family in Buffalo if released. The Government opposes release given the nature of the present charges and given Romero's extensive criminal history, which includes bail violations and violent felony offenses that would subject him to career offender guidelines upon conviction. The Government also asserts that Romero's voluntary surrender came only after the Federal Bureau of Investigation ("FBI") posted most-wanted

billboards in the Western New York area.  The United States Probation Office ("USPO") recommends continued detention.

The Court held a bail review hearing on November 12, 2014.  For the reasons below, the Court denies the motion.

## II) BACKGROUND

This case concerns allegations that Romero and others sold narcotics as part of a large drug conspiracy in the Buffalo area.  The Government filed an indictment against Romero and others on April 5, 2013.  (Dkt. No. 10.)  The indictment contains three counts against Romero.  In Count One, the Government states that Romero and others "did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 1 kilogram or more of a mixture and substance containing heroin, a Schedule I controlled substance, and a quantity of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(C).  All in violation of Title 21, United States Code, Section 846." (*Id.* at 2.)  In Count Three, the Government states that Romero, on October 5, 2011, "did knowingly, intentionally and unlawfully possess with intent to distribute, and distribute, a quantity of heroin, a Schedule I controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)." (*Id.* at 3–4.)  In Count Four, the

Government states that Romero, on December 21, 2011, "did knowingly, intentionally and unlawfully possess with intent to distribute, and distribute, a quantity of cocaine, a Schedule II controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)." (*Id.* at 4.)

The parties have a different perspective of what happened between the April 5, 2013 indictment and the April 4, 2014 arraignment. In his motion papers, Romero states succinctly that he "surrendered to the authorities in April, 2014. That fact alone, of course, should indicate that Mr. Romero is no risk of flight." (Dkt. No. 225 at 5.) The Government, in its opposition papers, tries to add context to that voluntary surrender. According to the Government, law enforcement agents reached Romero through an attorney after the indictment issued. Romero was in Puerto Rico at the time. The agents let Romero know that an arrest warrant had issued for him and wanted to know whether he would surrender to the FBI office in Puerto Rico. Through his attorney at the time, Romero allegedly indicated to agents that he would surrender soon after his birthday on April 11, 2013. A surrender in 2013 never happened. Meanwhile, the Government claims to have an informant who arranged to purchase narcotics from Romero in Buffalo in late January 2014. Sometime after January 2014, agents arranged to have most-wanted billboards posted around Buffalo and the Western New York area; the billboards featured a picture of Romero and asked for information that might lead to his whereabouts and arrest. Romero's flight

3

from Puerto Rico, where he had returned, to Buffalo to surrender occurred after these events.  The Government infers that Romero intentionally evaded agents for a year after the indictment issued.

Romero's arraignment and initial detention review occurred on April 4, 2014.  At that time, Romero made an argument for release but reserved his right to a full hearing.  The Court found that Romero was a flight risk by a preponderance of the evidence and found that he was a danger to the community by clear and convincing evidence.  The Court relied in part on Romero's bail report, which listed numerous arrests dating back to 1996 whose ultimate dispositions were not available.  The available information in the bail report included a violent felony conviction in 1997 for first-degree assault with intent to cause serious injury with a weapon.  In 2006, Romero pled guilty to drug conspiracy charges in federal court in this District.  (*See generally* Case No. 03-CR-33.)  While the federal charges were pending, Romero violated conditions of release by incurring separate criminal charges in Buffalo City Court for criminal possession of a weapon, reckless endangerment, and criminal mischief.  The ultimate disposition of the Buffalo City Court charges is unknown, and Romero was released again between May 5, 2006 and his sentencing on March 16, 2007.  After reviewing the bail report and all available information, the Court ordered Romero detained but without prejudice.  Romero has been in continuous federal custody since April 4, 2014.

Romero filed the pending motion for bail on October 22, 2014.  In support of release, Romero maintains that his April 2014 surrender to law enforcement agents was voluntary.  Romero emphasizes that he has lived in Western New York with his family since 1989 and has maintained a close relationship locally with his mother and two sisters.  Romero cites some of his employment history and implies that he could seek employment again if released.  Finally, Romero downplays his criminal history by highlighting that he made all court appearances in the past and that he surrendered voluntarily for his federal bail violation in 2006.  Romero concludes that he is neither a flight risk nor danger and has informed the Court that his family is working on what they could post for bail.

The Government opposes release.  The Government rejects any contention from Romero that he surrendered voluntarily; it highlights that Romero surrendered a year after he knew about the indictment and following both travel for drug sales and a most-wanted billboard campaign.  The Government argues that Romero has a motive to flee because, if convicted, he faces career offender guidelines prompted by his violent felony conviction.  As for the federal bail violation, the Government emphasizes that it happened because of new local charges, no matter that Romero was released again pending sentencing in that case.  Finally, the Government emphasizes that it has wiretap evidence of Romero making comments about retaliation that prompted law enforcement agents to expand their investigation.

5

## III) DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.' U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (citations omitted). "To order detention, the district court must find, after a hearing, that the government has established the

defendant's dangerousness by clear and convincing evidence.  The rules of evidence do not apply in a detention hearing.  Further, the government may proceed by proffer."  *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

Here, several factors weigh in favor of continued detention.  Romero faces serious charges of drug conspiracy and drug sales on specific occasions.  The Government has proffered some of its evidence for those charges.  The Government also has proffered that it has at least one informant who can testify to arranging a drug purchase from Romero in January 2014, a time when Romero allegedly knew that law enforcement agents were looking for him.  The charges are serious in themselves but also trigger the rebuttable presumption in favor of detention set forth in 18 U.S.C. § 3142(e).  The weight of the evidence against Romero, while not affecting the presumption of innocence, does affect bail considerations.  *Cf. U.S. v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987) ("As to the weight of the evidence, the government apparently has numerous informants as well as physical evidence to support its charges.  Indeed, [defendant] has made no significant attack on the government's proffered evidence.").  Romero also has a violent criminal history and once violated federal release conditions by incurring charges for other crimes.  *Cf. U.S. v. Barnett*, No. 5:03-CR-243, 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003) ("Every sentence of probation or parole requires a defendant to meet judicially imposed conditions, and violations

7

of either are further evidence of a defendant's inability to comply with judicial mandates and supervision.  Evidence of new criminal behavior while other charges are pending inevitably leads to the conclusion that a defendant places his own self-interests above that of the community.  In turn, the community has a right to expect courts to protect it.").  As for Romero's surrender in April 2014, the final act of flying from Puerto Rico to Buffalo to surrender in lieu of arrest technically was voluntary.  Romero, however, has not denied knowing about the indictment in April 2013.  That is his right, of course, if addressing the issue potentially could be incriminating; nonetheless, the Government's unopposed information makes the passage of a year before arraignment suspicious at the least.  In all, Romero's record suggests that conditions of release may not stop him from evasive behavior or from returning to criminal activity.  *Cf. U.S. v. English*, 629 F.3d 311, 322 (2d Cir. 2011) (affirming a detention order where "the proposal for electronic monitoring did not eliminate the danger that [defendant] would 'engage in further sale of narcotics' by telephone with a willing collaborator").

    Under these circumstances, the Court finds that Romero has not rebutted the presumption in favor of detention.  The Court finds further that Romero poses a flight risk by preponderance of the evidence and a risk of danger to the community by clear and convincing evidence.

## IV) CONCLUSION

For all of the foregoing reasons, the Court denies Romero's bail motion (Dkt. No. 225). Romero will remain in custody pending trial.

Romero will remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's continued order of detention, and pursuant to 18 U.S.C. § 3142(i)(3), the Attorney General must afford Romero reasonable opportunity for private consultation with counsel. *See also U.S. v. Rodriguez*, No. 12-CR-83S, 2014 WL 4094561 (W.D.N.Y. Aug. 18, 2014) (Scott, *M.J.*). Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which Romero is confined must deliver Romero to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order will be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

                                        __/s Hugh B. Scott_____
                                        HONORABLE HUGH B. SCOTT
                                        UNITED STATES MAGISTRATE JUDGE

DATED: November 25, 2014